**Vanderslice v. Moessner**

*Elliot L. Raskin,* for plaintiff.
*Richard A. Kessler,* for defendants.

KREMER, *J.,* February 4, 1981—Defendants, Carl Moessner and Robert Moessner, have moved for summary judgment based upon plaintiff's alleged failure to meet the $750 threshold requirement under the Pennsylvania No-fault Motor Vehicle Insurance Act[1] (hereafter the act).

This action arises from an automobile accident which occurred on December 23, 1977 in the parking lot of Archbishop Ryan High School, Philadelphia, Pa., in which a car operated by plaintiff was involved in a collision with an automobile owned by Carl Moessner and operated by Robert Moessner. In plaintiff's complaint he pleaded: "Plaintiff has incurred and will in the future incur expenses exceeding $750 for medical bills and medication." Defendants' answer (and new matter) denied that

---

1. Act of July 19, 1974, P.L. 489, art. III, sec. 301(a)(5)(B), 40 P.S. § 1009.301(a)(5)(B).

plaintiff's claims were in excess of the threshold requirements and alleged that tort recovery was barred under the act.

In response to interrogatories plaintiff submitted bills as follows:

| | |
|---|---:|
| Dr. Maurice Singer— office visits— | $335.00 |
| Dr. Maurice Singer— hospital treatment | 75.00 |
| Oxford Hospital—hospital care | 125.18 |
| Anthony J. Palmaccio, Jr., M.D.— office visit | 85.00 |

He also submitted a bill from Northeast Medical Equipment, Inc. as follows:

| | |
|---|---:|
| 1 Whirlpool | $480.00 |
| 1 Custom fitted, special pattern, sacral lumbar support | 125.00 |
| 1 Custom fitted, special pattern, hard plastic cervical collar | 65.00 |
| 1 Custom fitted, special pattern, soft foam cervical collar | 25.00 |
| 1 Cervical pillow | 20.00 |
| 1 Twin bed board | 52.00 |
| 1 Moist heat pack hydroculator | 30.00 |
| 1 Moist heat pack | 16.00 |
| 1 Orthopedic car seat | 38.00 |
| | $851.00 |

In plaintiff's answer to defendants' motion he alleged that the items purchased from Northeast Medical are prosthetic devices which fall within the purview of the $750 threshold requirement of the act.

The motion for summary judgment presents two separate issues:

1. Must a plaintiff allege and show that damages

are in excess of $750 prior to or at the time suit is instituted?

2. Are the items purchased from Northeast Medical Equipment, Inc. to be considered "prosthetic devices" within the purview of the $750 threshold requirement?

The first issue raised is whether a plaintiff must specifically allege that he has already incurred (prior to the institution of suit) $750 in medical expenses (or other expenses properly allowed in section 301(a)(5)(B)) in order to state a cause of action. See Gleeson v. Belkin, 9 D. & C. 3d 499, 2 Phila. 231 (1979).

There have been no appellate decisions addressing the issue whether a plaintiff must allege that he has (already) incurred $750 in cognizable expenses in order to state a cause of action under the act. Several common pleas courts throughout the Commonwealth have considered the issue with varying results. In O'Sullivan v. Ruszecki, 2 D. & C. 3d 276, 280 (1977), plaintiffs' complaint alleged that wife-plaintiff's injuries may result in expenses of $750. Defendant filed preliminary objections in the nature of a demurrer, a motion to strike and a motion for more specific pleading. Judge Eunice Ross of Allegheny County Court of Common Pleas denied defendant's preliminary objections and held that the act did not require the $750 amount to be absolutely averred in order to appropriately state a cause of action. The court concluded that "[i]t is sufficient to allege with reasonable medical certainty that medical expenses will be in the threshold amount."

In Markley v. Brown, 66 Lanc. 301 (1978), plaintiff alleged bills which "may exceed Seven Hundred Fifty ($750.00) Dollars in the future." Judge Paul A. Mueller, Jr. granted leave to amend the com-

plaint to at least set forth the dollar amount and dates when medical expenses were incurred to assist the court in determining whether or not the $750 threshold would be reached with reasonable certainty.

In Diehl v. Smith, 92 York 193, 194 (1979), Judge Joseph E. Erb sustained defendants' preliminary objections and granted leave for plaintiff to file an amended complaint where plaintiff alleged $720.90 in medical expenses and that he would incur future medical expenses. The court stated:

"[W]hile the medical expenses approach the amount require[d] to meet the exception under the act, the complaint does not allege that threshold has been met or facts to support a conclusion that additional medical expenses will be incurred which will carry the total over the required threshold. Taking into consideration the purpose of the act, we do not believe it is proper to allow the plaintiff to proceed on the assumption that those costs are so close to the threshold that it will be met rather than the fact that the threshold has been met."

Compare Theal v. Confer, 7 D. & C. 3d 614 (1978), where President Judge Keith B. Quigley discussed the exceptions stated in section 301(a)(5) but did not reach the specific issue before us.

In Walk v. Russell, 10 D. & C. 3d 330, 333-334 (1979) defendant filed preliminary objections to plaintiff's complaint which alleged medical expenses of $502.90 and that there was a reasonable basis to believe that there would be additional medical expenses in the future which would be in excess of the threshold. Judge Harold E. Sheely sustained defendant's preliminary objections and granted leave to plaintiffs to amend their complaint "to set forth *facts* which will establish to a reason-

able certainty that the $750 threshold will be met." (Emphasis in original.) The court concluded that only then could "it be determined whether or not plaintiffs rely on more than mere speculation."

In Philadelphia County two common pleas court judges have addressed the issue and have reached opposite results. In Mabey v. Michkens, 7 D. & C. 3d 792, 795 (1978), Judge Lois Forer overruled defendant's preliminary objections and stated that:

"No useful purpose would be served by requiring a plaintiff actually to have incurred $750 in medical expenses before filing suit if it can be fairly alleged that the medical expenses are reasonably expected to be in excess of the threshold amount. A contrary ruling would not only raise problems with respect to the statute of limitations but might encourage early, excessive or unnecessary treatment."

In Gleeson v. Belkin, 9 D. & C. 3d 499, 2 Phila. 231, or 233 (1979), Judge William Marutani sympathetically noted Judge Forer's opinion but concluded that the $750 threshold had to be met prior to the institution of and as a condition precedent to filing a complaint. He concluded that the legislative debates indicated an intention that the threshold be met prior to the institution of suit. We do not read the debates to require such result. The debates certainly clearly reflect an understanding that there was to be a threshold which had to be met, but there was no discussion or indication that suit could not be instituted until after the threshold was met.

The fact and truth of the matter is that the legislature never contemplated or considered so technical a matter as to whether a meeting of the threshold requirement was a condition precedent to institu-

tion of suit. There is therefore available to the court an evaluation of reason and functional utility as to what is the better construction to be given to the statutory language. That better construction has been indicated by all of the common pleas judges who have considered the problem. Even Judge Marutani recognized the better, fairer and more functionally useful rule to be that as indicated and phrased by Judge Mueller: whether the pleadings and facts indicate that the threshold will be met to a reasonable degree of certainty and medical certainty. No useful purpose is to be served by further repeating what our other courts of common pleas have variously stated.

We turn then to the question as to whether plaintiff has pleaded facts or demonstrated facts in his answers to interrogatories to the effect that the threshold requirement has already been met or will be met to a reasonable degree of certainty. Plaintiff has contended that $851 in expenses fall within the classification of prosthetic devices. Defendant contends that these items are not prosthetic devices.

Section 301(a) of the act abolishes tort liability in this Commonwealth with respect to any injury arising out of the maintenance or use of a motor vehicle. Exceptions to the abolition of tort liability are outlined in section 301(a) as follows:

"(a) Partial abolition.—Tort liability is abolished with respect to any injury that takes place in this State in accordance with the provisions of this act if such injury arises out of the maintenance or use of a motor vehicle, except that: . . . (5) A person remains liable for damages for non-economic detriment if the accident results in: (A) death or serious and permanent injury; or (B) the reasonable value of reasonable and necessary medical and de-

ntal services, including prosthetic devices and necessary ambulance, hospital and professional nursing expenses incurred in the diagnosis, care and recovery of the victim, exclusive of diagnostic x-ray costs and rehabilitation costs in excess of one hundred dollars ($100) is in excess of seven hundred fifty dollars ($750). For purposes of this subclause, the reasonable value of hospital room and board shall be the amount determined by the Department of Health to be the average daily rate charged for a semi-private hospital room and board computed from such charges by all hospitals in the Commonwealth."[2]

This section clearly provides that the reasonable value of the reasonable and necessary prosthetic devices shall be included to determine whether or not the $750 threshold has been reached. We have concluded that the items purchased from Northeast Medical, Inc., presumably obtained to alleviate plaintiff's pain and suffering, are not "prosthetic devices" as contemplated by the act. Nevertheless, we are also of the opinion that these items are includible as necessary medical services or expenses.[3]

Unfortunately, neither the act nor its legislative history provides guidance as to the legislative

2. Subsections C and D also provide eligibility for non-economic detriment if the following conditions have been met: "(C) medically determinable physical or mental impairment which prevents the victim from performing all or substantially all of the material acts and duties which constitute his usual and customary daily activities and which continues for more than sixty consecutive days; or (D) injury which in whole or in part consists of cosmetic disfigurement which is permanent, irreparable and severe."

3. In section 103 of the act "Medical and vocational re-habilitation services" are defined as those "services necessary to reduce disability and to restore the physical, psychological, social, and vocational functioning of a victim. Such services

meaning of the phrase "prosthetic devices." Webster's dictionary defines "prosthetics" as "the surgical and dental specialties concerned with the artificial replacement of missing parts."[4] There is no allegation or indication in this case that plaintiff has lost a limb, or any bodily part as a result of the accident. Although the money expended on these devices is relevant to establish plaintiff's "noneconomic detriment,"[5] they cannot be considered to be prosthetic devices.

However, though neither party has contended that the enumerated expenses are to be considered as reasonable and necessary medical services or expenses we see no reason to exclude them. A lumbo-sacral support and a cervical collar are certainly devices used for the alleviation of pain. They may be used to reduce muscle spasm and its consequent disabling effects. There is nothing in the language of section 301(a)(5)(B) that limits the meaning of the word "services" to personal services. There is nothing to indicate that the words "services" and "expenses" were not used interchangeably. The reference to the *inclusion* of

may include, but are not limited to, medical care, diagnostic and evaluation procedures, physical and occupational therapy, other necessary therapies, speech pathology and audiology, optometric services, nursing care under the supervision of a registered nurse, medical social services, vocational rehabilitation and training services, occupational licenses and tools, and transportation where necessary to secure medical and vocational rehabilitation services. . . ."

4. Websters Third New International Dictionary, p. 1822, G. & C. Merriam Company, Publishers, Springfield, Mass., 1965.

5. "'Noneconomic detriment' means pain, suffering, inconvenience, physical impairment, and other nonpecuniary damage recoverable under the tort law applicable to injury arising out of the maintenance or use of a motor vehicle. The term does not include punitive or exemplary damages." 40 P.S. § 1009.103.

prosthetic devices[6] certainly does not serve as an *exclusion* of other devices. That inclusion expanded the classification as to what is to be considered as expenses for "diagnosis, care and recovery of the victim." That inclusion of prosthetic devices makes it clear that the word "services" cannot be deemed to be limited to personal services. Such items as lumbo-sacral supports or braces, cervical collars, and hydroculators, if medically reasonable and necessary, may be considered as services or expenses for the care and recovery of the victim. They are not rehabilitative expenses limited to $100.

In addition to all of the foregoing there is a further barrier to the grant of a motion for summary judgment because the motion, in any event, is filed prematurely. If we agreed with defendant's argument that the Northeast Medical expenses were not includible for purposes of threshold calculation and if we agreed that the plaintiff has not sufficiently pleaded or alleged that other medical and dental services will exceed the $750 threshold, we would still have to give plaintiff a reasonable opportunity to amend his complaint or answers to interrogatories. Such delays could be obviated by more carefully drafted and articulated discovery procedures. Proper discovery can compel a party to pinpoint his answers and positions.

For the reasons stated above,[7] we enter the following

6. It may well be that a prosthetic device is ordinarily used for rehabilitative purposes and a special provision was necessary to take such items out of the $100 limitation for rehabilitative costs.

7. Pa.R.C.P. 1035(a) provides that a motion for summary judgment can be made, inter alia, after the pleadings are closed. Although defendants failed to allege that the pleadings are closed, we do not predicate our disposition on this ground.

## ORDER

And now, February 4, 1981, defendants' motion for summary judgment is overruled.